DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
AMY TU QUYEN LE (Bar No. 341925)
amy.le@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (admitted *pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (admitted *pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant BLEACHER REPORT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABARI SELLERS, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>BLEACHER REPORT, INC.,<br><br>Defendant. | Case No. 3:23-cv-00368-TLT<br><br>**DEFENDANT BLEACHER REPORT INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE**<br><br>Date:   July 25, 2023<br>Time:   2:00 pm<br>Dept.:  Courtroom 9—19th Floor<br>Judge: Honorable Trina L. Thompson |

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT AND ALL PARTIES OF RECORD:

3

PLEASE TAKE NOTICE that on July 25, 2023, at 2:00pm, or as soon thereafter as the

4 matter may be heard, before the Honorable Trina L. Thompson, in Courtroom 9, 19th Floor,

5 Defendant Bleacher Report, Inc. ("Defendant" or "Bleacher Report") will and hereby does move

6 to dismiss Plaintiff Jabari Sellers' Complaint (ECF No. 1) filed in this action. Bleacher Report

7 further moves to dismiss and/or strike Plaintiff's class allegations based on his agreement to a class

8 action waiver. Bleacher Report's motion to dismiss and/or strike is brought pursuant to Federal

9 Rules of Civil Procedure 12(b)(6), 12(f), and 23(d)(1)(D).

10

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

11 and Authorities in support thereof, Bleacher Report's Request for Judicial Notice and the

12 accompanying Declaration of Blake J. Steinberg,[1] and all other pleadings and papers on file herein,

13 and such argument and evidence as may be presented to the Court.

14

15

DATED: April 6, 2023                    Respectfully submitted,

16

17

WEIL, GOTSHAL & MANGES LLP

18

By:   */s/ David R. Singh*
                                        David R. Singh

19

Attorney for Defendant,
*Bleacher Report, Inc.*

20

21

22

23

24

25

26

27

28

---

[1] All references to "Ex." herein are to the exhibits to the concurrently filed Declaration of Blake J. Steinberg.

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT...................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD..............................................................................................................7

ARGUMENT ..........................................................................................................................8

I.     Plaintiff Fails to Plausibly Allege that Bleacher Report Violated the VPPA. ...............8

      A.     Plaintiff Does Not Plausibly Allege That Bleacher Report Provided Prerecorded Videos to Him.................................................................................................8

      B.     Plaintiff Has Not Plausibly Alleged Bleacher Report Disclosed Information Reflecting That He "Requested or Obtained" Specific Video Materials. ...........8

      C.     Plaintiff Has Not Plausibly Alleged Bleacher Report Disclosed Information That Would Allow an Ordinary Person to Identify Him. ...................................10

      D.     Plaintiff Has Not Plausibly Alleged Defendant "Knowingly" Disclosed PII. ...11

      E.     Bleacher Report is Not a Video Tape Service Provider. ...................................12

II.     In Any Event, Because Plaintiff Consented to a Binding Class Waiver, the Court Should Dismiss And/Or Strike His Class Allegations. ...................................................14

CONCLUSION.......................................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*,
  No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018)..................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................15, 17

*Austin-Spearman v. AMC Network Ent. LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015)................................................................................10, 14

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230 (S.D.N.Y. Aug. 11,
  2017), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017) ..........................................12

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17CV04570LAKKHP, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
  *adopted by*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31,
  2018) ..........................................................................................................14

*Bielousov v. GoPro, Inc.*,
  No. 16-CV-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017) ......................................9

*Biggs v. Midland Credit Mgmt., Inc.*,
  No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) ...........................18

*Birdsong v. AT&T Corp.*,
  No. C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013) .......................................17

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
  No. 04-cv-04825-JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ..........................................15

*Carter v. Rent-A-Ctr., Inc.*,
  718 F. App'x 502 (9th Cir. 2017) ........................................................................................17

*Davis v. Einstein Noah Rest. Grp., Inc.*,
  No. 19-CV-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019)..................................18

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017)........................................................................................ *passim*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hart v. Charter Commc'ns, Inc.*,
No. SACV170556DOCRAOX, 2017 WL 6942425 (C.D. Cal. Nov. 8, 2017),
*aff'd*, 814 F. App'x 211 (9th Cir. 2020) ................................................................................16

*Horton v. Dow Jones & Co., Inc.*,
804 F. App'x 81 (2d Cir. 2020) ............................................................................................18

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................................................4, 10, 11, 12

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................10

*Jeong v. Nexo Cap. Inc.*,
No. 21-CV-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ..............................17

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ..................................................................................14, 16

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .................................................................................................................14

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015) .................................................................................15

*Louth v. NFL Enters. LLC*,
No. 121CV00405MSMPAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ..............................8

*Lu v. AT & T Servs., Inc.*,
No. C 10-05954 SBA, 2011 WL 2470268 (N.D. Cal. June 21, 2011) ..................................17

*Martin v. Meredith Corp.*,
No. 22CV4776 (DLC), 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ..................................9

*Moreland v. Ad Optimizers, LLC.*,
No. CV 13-00216 PSG, 2013 WL 3786311 (N.D. Cal. July 18, 2013) ..................................6

*Neo4j, Inc. v. PureThink, LLC*,
480 F.Supp.3d 1071 (N.D. Cal. Aug. 20, 2020) ............................................................2, 4, 5

*Nicholas v. Wayfair Inc.*,
410 F. Supp. 3d 448 (E.D.N.Y. 2019) ..................................................................................15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .................................................................................................11

*Parziale v. HP, Inc*,
No. 5:19-CV-05363-EJD, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ......................2, 3, 5

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)..................................................................................16

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006)................................................................................14

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)...................................................................12

*Sacchi v. Verizon Online LLC*,
   No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) .........................16

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
   298 F. Supp. 3d 1285 (N.D. Cal. 2018).................................................................18

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ....................................................................7

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) ....................................................................8

*Schmidt v. Samsung Electronics America, Inc.*,
   No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017)....................18

*Shen v. United Parcel Serv.*,
   No. 2:21-CV-08446-MCS-E, 2022 WL 17886012 (C.D. Cal. Nov. 21, 2022) ......16

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........10

*Stark v. Patreon, Inc.*,
   No. 22-CV-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022)...........7, 8, 12

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...................................................................7

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020) .....................................................................4

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)..................................................................13

*Walker v. Meta Platforms, Inc.*,
   No. 22-cv-02442-JST (N.D. Cal. Mar. 3, 2023), ECF No. 42 .............................7, 8

*Warren v. Fox Fam. Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003).................................................................................7

*Wilson v. United Health Grp., Inc.*,
   No. 2:12-CV-01349-MCE, 2012 WL 6088318 (E.D. Cal. Dec. 6, 2012) ...............15

*Woods v. Google LLC,*
    No. 5:11-CV-01263-EJD, 2018 WL 5292210 (N.D. Cal. Oct. 23, 2018) ................................7

*Zaltz v. JDATE,*
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................................................15

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.*........................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 7

Fed. R. Civ. P. 12(f) ..............................................................................................................1, 7, 8

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................................................1, 7, 8

S. Rep. No. 100-599 (1988) ...................................................................................................1, 13

134 Cong. Rec. S5397-01 (1988)...............................................................................................14

United States of America's Memorandum in Support of the Constitutionality of
    the Video Privacy Protection Act, *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-
    JCS (N.D. Cal. May 27, 2022), ECF No. 49-1 .......................................................................14

Bleacher Report, https://bleacherreport.com.........................................................................2, 3, 8, 9

Meta, *Cookies Policy,*
    https://mbasic.facebook.com/privacy/policies/cookies/printable/ .............................4, 5, 10, 12

*Obtain,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/
    obtain.........................................................................................................................................9

*Request,* Merriam-Webster.com, https://www.merriamwebster.com/dictionary/
    request .......................................................................................................................................9

*Similar,* Black's Law Dictionary (6th ed. 1990) ..........................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

Bleacher Report respectfully submits this memorandum of law in support of its motion to dismiss and/or strike pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f) and 23(d)(1)(D).

**PRELIMINARY STATEMENT**

This lawsuit is part of a flood of over 100 actions filed in the last year by the plaintiff bar which seek to stretch a previously seldom invoked statute, the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"), to cover situations that differ markedly from those that motivated its passage. Congress enacted the VPPA in 1988 after a video rental store leaked Judge Robert H. Bork's video tape rental history to a Washington newspaper during Judge Bork's Supreme Court nomination hearings. *See* S. REP. NO. 100-599, at 5 (1988). The VPPA forbids a "video tape service provider" from "knowingly disclos[ing]" the "personally identifiable information" ("PII") of its "consumer[s]." 18 U.S.C. § 2710(b)(1). Eager to use the threat of immense statutory damages under the VPPA to try to extract settlements, the plaintiff bar is now attempting to apply this statute to any website with video content, here Bleacherreport.com. The Court should not condone this abuse of the VPPA and should dismiss the Complaint in its entirety.

Indeed, Plaintiff has not come close to pleading an actionable VPPA claim. <u>First</u>, as courts in this very District have held, the VPPA only covers the delivery of prerecorded video cassette tapes or similar audio visual materials. Plaintiff, however, does not allege that he viewed prerecorded—as opposed to live—video content on Bleacher Report. The case should be dismissed on this basis alone. <u>Second</u>, Plaintiff does not meet his pleading burden of plausibly alleging that Bleacher Report disclosed information reflecting that he "requested or obtained" specific video materials because he (a) never identifies what videos he allegedly watched by name, and (b) never plausibly alleges whether he actively sought out videos as is required to have "requested or obtained" specific video materials, or simply viewed videos which played automatically. Recent authority makes clear this is a second case dispositive problem with his Complaint. <u>Third</u>, Plaintiff has not plausibly alleged that Bleacher Report disclosed PII within the meaning of the VPPA because the cookie that allegedly disclosed his identifying information was Meta's cookie. Accordingly, any disclosure by this cookie was from Meta to itself, not as a disclosure by Bleacher.

1   <u>Fourth</u>, essentially ignoring the scienter requirement under the VPPA, Plaintiff's Complaint fails

2   to plausibly allege Bleacher Report disclosed his alleged PII "knowingly." <u>Fifth</u>, Plaintiff also fails

3   to plead facts plausibly establishing that Bleacher Report is a "video tape service provider" within

4   the meaning of the VPPA, including because Bleacher Report is, as Plaintiff alleges, "an on-line

5   news publication," not a video tape service provider within the meaning of the statute.  Compl. ¶

6   55.

7   In any event, even if the individual Plaintiff's case could survive these overwhelming

8   deficiencies, Plaintiff's class claims should be dismissed or stricken.  Plaintiff agreed to Bleacher

9   Report's judicially noticeable Terms of Use, including agreeing to modifications of those same

10  terms over the years.  Those terms and conditions have contained a class waiver for many years

11  and Plaintiff was repeatedly put on notice of those terms, including the class waiver.  Accordingly,

12  the Complaint's class claims cannot survive and should be dismissed or stricken.

13  **BACKGROUND**

14  ***The Parties.***  Bleacher Report is a company "focused on sports and sports culture," Compl.

15  ¶ 13, which distributes sports news and commentary through its website, Bleacherreport.com.  *Id.*

16  ¶ 25; Bleacher Report, *Home Page*, https://bleacherreport.com.[2]  Visitors of Bleacher Report can

17  view the website without signing up for anything, or they can create an account or sign up for a

18  newsletter.  *See, e.g.*, Ex. A at 1 (2007 Account Sign-Up); Ex. B at 2 (2007 Newsletter Sign-Up);

19  Bleacher Report, *Newsletter Sign-Up*, https://bleacherreport.com/newsletter; Compl. ¶¶ 20-24.[3]

20  Plaintiff is a Tennessee resident (with no apparent connection to this venue) who alleges

21

22  [2] The Court may consider the Bleacherreport.com website because it is publicly available, its
    authenticity is not reasonably subject to dispute, and it is referenced in the Complaint.  *See* Compl.

23  ¶ 43; *see also Neo4j, Inc. v. PureThink, LLC*, 480 F.Supp.3d 1071, 1075 (N.D. Cal. Aug. 20, 2020)
    ("On both a motion to dismiss and a motion to strike, a court may consider the pleadings as well as

24  documents that are attached to the pleadings, incorporated by reference when their authenticity is
    not contested, or are otherwise properly the subject to judicial notice.").

25
    [3] The Court may consider archived versions of the Bleacherreport.com website accessible via the

26  Wayback Machine, screenshots of which are attached to Declaration of Blake J. Steinberg
    submitted in support of Defendant's Request for Judicial Notice.  *See Neo4j, Inc.*, 480 F.Supp.3d

27  at 1075; *Parziale v. HP, Inc*, No. 5:19-CV-05363-EJD, 2020 WL 5798274, at *3 (citations omitted)
    (N.D. Cal. Sept. 29, 2020) ("Courts have taken judicial notice of the contents of web pages available

28  through the Wayback Machine as facts that can be accurately and readily determined from sources
    whose accuracy cannot reasonably be questioned.").

1    that he "began his digital subscription to Bleacherreport.com around 2007" and that he receives

2    "emails and other news" from Bleacher Report.  Compl. ¶¶ 12, 56.  Plaintiff claims to have become

3    "a digital subscriber" in 2007 "by providing, among other information, his name, address, email

4    address, IP address . . . and any cookies associated with his device."  *Id.* ¶ 56.  Plaintiff's own

5    allegations demonstrate that he created an account in 2007 because website visitors were not

6    required to provide their names to only sign up for newsletters while account holders did have to

7    provide their names.[4]

8            Plaintiff also alleges he has had a "Facebook account" since approximately 2005 and

9    viewed Video Media via Bleacher Report's website while logged into his Facebook account.

10   Compl. ¶ 12.  However, he never specifies what videos he viewed by name, and he does not specify

11   whether the videos he allegedly watched were prerecorded or live-streamed.  As is clear from the

12   Bleacher website, Bleacher Report offers both prerecorded and live-streamed videos.  *See, e.g.,* Ex.

13   H (Bleacher Report, *All Elite Wrestling PPV*, https://bleacherreport.com/videos/all-elite-wrestling-

14   ppv#main).

15           ***The Alleged Disclosure of PII.***  Subject to certain exceptions, the VPPA prohibits video

16   tape service providers from disclosing PII, which is defined as information "which identifies a

17   person as having requested or obtained specific video materials or services from a video tape service

18   provider."  18 U.S.C. § 2710(a)(3).  Plaintiff claims Bleacher Report uses the Meta Pixel, which

19   allows it to "track[] and disclose[]" to Meta the "viewed Video Media" and Facebook IDs ("FIDs")

20   of Bleacher Report visitors.  Compl. ¶ 4.  While Plaintiff suggests he "viewed Video Media" on

21   Bleacherreport.com, *id.* ¶ 57, he never specifically alleges whether he clicked on any videos to

22   watch them.  Many videos on Bleacherreport.com play automatically, meaning visitors do not need

23   to click on these videos for them to start playing.  *E.g.,* Ex. G at 3 (Erin Walsh, *Report: Bears Trade*

24   *No.   1   Pick   in   2023   NFL   Draft   to   Panthers   for   4   Picks,   DJ   Moore,*

25

---

26   [4] This can be verified via the Wayback Machine.  *See* Ex. A at 1 (2007 Account Sign-Up); Ex. B
     at 1 (2007 Newsletter Sign-Up); *see Parziale*, 2020 WL 5798274, at *3.  Whether he signed up for

27   a free account with Bleacher Report and/or a newsletter, Defendant disputes that this would suffice
     for him to properly be consider a "consumer" within the meaning of the VPPA.  18 U.S.C. §

28   2710(a)(1) ("[T]he term 'consumer' means any renter, purchaser, or subscriber of goods or services
     from a video tape service provider.").

1   https://bleacherreport.com/articles/10068385-report-bears-trade-no-1-pick-in-2023-nfl-draft-to-

2   panthers-for-4-picks-dj-moore).

3        While Plaintiff asserts that Bleacher Report collects the names, email addresses, zip codes

4   and IP addresses of its visitors, *see, e.g.*, Compl. ¶¶ 20, 47, 56, the only information he identifies

5   as potentially enabling Meta to connect "viewed Video Media" information to a specific individual

6   is a Bleacher Report visitor's FID.  *See id.* ¶¶ 4, 43, 50.  In an attempt to satisfy this Circuit's

7   standard as to what constitutes PII under the VPPA, Plaintiff asserts that any "ordinary person" can

8   use FIDs to locate "digital subscribers' corresponding Facebook profile[s]."  *Id.* ¶ 5; *Eichenberger*

9   *v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).

10        In detailing how these FIDs are disclosed to Meta, Plaintiff points to "personally identifiable

11   FID cookies."  *Id.* ¶ 43.  While Plaintiff does not identify the cookie at issue by name, the Complaint

12   references the Facebook website, which in turn explains that Meta (not Bleacher) uses the c_user

13   cookie to keep individuals logged in to Facebook.   Compl. ¶ 45; Meta, *Cookies Policy*,

14   https://mbasic.facebook.com/privacy/policies/cookies/printable/. [5]   This c_user cookie contains

15   "the logged-in user's Facebook user ID expressed in a numeric format."  *In re Hulu Priv. Litig.*, 86

16   F. Supp. 3d 1090, 1094 (N.D. Cal. 2015).  Plaintiff cannot and does not allege that this cookie

17   belongs to Bleacher Report, or relatedly, that Bleacher Report discloses the cookie to Meta.  Indeed,

18   the Facebook website indisputably establishes that the cookie is Meta's cookie, not Bleacher

19   Report's.  Meta, *Cookies Policy*, https://mbasic.facebook.com/privacy/policies/cookies/printable/.

20   Meta deposits this cookie onto a user's browser on the user's device when the user visits the

21   Facebook website, *id.*, and as Plaintiff acknowledges, the cookie is then "transmitted to Facebook

22   by the user's browser," not Bleacher Report.  *See* Compl. ¶ 43.

23        **The Class Waiver.**  In 2007, individuals who created Bleacher Report accounts on the

24   website were required to check a box confirming that they had "read and understood this Terms of

25   Use agreement and agree to be bound by its provisions."  Ex. A at 1 (2007 Account Sign- Up).  The

26

27   _____
     [5] The Court may consider the Facebook website in resolving the motion because it is referred to in
28   the Complaint.  *Neo4j*, 480 F. Supp. 3d at 1075; *see also Threshold Enterprises Ltd. v. Pressed
     Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (citations omitted) ("In general, websites
     and their contents may be judicially noticed.").

hyperlinked phrase "Terms of Use agreement" was bolded, underlined, and in a different color than the surrounding text, and clicking on it led individuals to the August 24, 2007 Bleacher Report Terms of Use, which they could easily scroll through and read.  *Id.*  The August 24, 2007 Terms of Use provided that "Bleacher Report reserves the right, at its sole discretion, to modify or replace the Terms of Use at any time.  If we do this, we will post the amended Terms of Use on this page and indicate at the top of the page the date the Terms of Use were last revised.  You are responsible for reviewing and becoming familiar with any such modifications. Use of the Service by you following such notification constitutes your acceptance of the terms and conditions of the Terms of Use as modified."  *Id.* at 2 (August 24, 2007 Terms of Use).[6]

Bleacher Report later updated its Terms of Use on several occasions.  The October 25, 2015 Terms of Use contained a class waiver provision, which stated:  "[W]e and you will resolve any disputes, claims, or controversies on an individual basis," and "any claims brought under this Agreement in connection with the Service will be brought in an individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or representative proceeding."  Ex. C at 16 (October 25, 2015 Terms of Use).   In 2016, Bleacherreport.com displayed a banner pop-up which alerted visitors that "[b]y using this site, you agree to the Privacy Policy and Terms of Use." *Id.* at 1 (2016 Pop-Up).  The hyperlinked phrases "Terms of Use" and "Privacy Policy" were in bold and underlined, and clicking on them led users to the Terms of Use and Privacy Policy which they could easily scroll through and read.  *See id.*  This pop-up persisted until individuals clicked the "X Close" button to close the pop-up.  *See id.*

The Terms were again updated on December 19, 2019.  These Terms also had a class waiver, which stated: "You and we agree that each may bring claims against the other only in your or our individual capacity, and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding."  Ex. D at 21 (December 19, 2019 Terms of Use).  In 2020, Bleacher Report also displayed a banner pop-up which read: "By using this site,

---

[6] The Court may take judicial notice of the Terms of Use because the Complaint references the Terms, the current Terms are available on Bleacher Report's website, and prior versions of the Terms are accessible via the Wayback Machine.  Compl. ¶¶ 20-24; *Neo4j*, 480 F. Supp. 3d at 1075; *Parziale*, 2020 WL 5798274, at *3.

you agree to the Privacy Policy and Terms of Use." *Id.* at 1 (2020 Pop-Up). The hyperlinked phrases "Terms of Use" and "Privacy Policy" were again bolded, and clicking on them led users to the Terms of Use and Privacy Policy which they could easily scroll through and read. *See id.* This pop-up would also persist until individuals clicked "X." *See id.*

Bleacher Report updated its Terms again on December 21, 2022. In late 2022 and early 2023, Bleacher Report displayed another pop-up which provided that "By using Bleacher Report and/or maintaining your account, you agree to our updated Terms, including an updated arbitration clause. By clicking 'X', you acknowledge you read and agree to the updated Terms." Ex. E at 1 (Late 2022/Early 2023 Pop-Up). The hyperlinked word "Terms" was underlined, distinguishing it from the surrounding text, and clicking it led individuals to the Terms of Use, which they could easily scroll through and read. *See id.* This pop-up would also persist until an individual clicked an 'X' button to permanently close it. *See id.* Bleacher Report also provided notice of this update to its Terms via an email which stated: "**FYI:** Bleacher Report has updated our <u>Terms of Use</u>. The updates contain important information about your legal rights, including updates to the arbitration clause and other rules and procedures that govern the resolution of disputes between you and Bleacher Report. The updates won't affect the way you use Bleacher Report. You can review the new updated <u>Terms</u> here. By continuing to access Bleacher Report, you agree to be bound by the updated Terms of Use." Ex. F (December 2022 Email Notice of Updated Terms). The underlined phrases "Terms of Use" and "Terms" were hyperlinks, and clicking on them led individuals to the Terms, which they could easily scroll through and read. *Id.*[7] These Terms of Use provide that: "You and Bleacher Report agree that . . . each party may bring claims . . . against the other only in an individual capacity, and not participate as a plaintiff, claimant, or class member in any class, collective, consolidated . . . or representative proceeding." Ex. E at 19 (December 21, 2022 Terms of Use). Thus, the Terms of Use to which Plaintiff agreed, including his agreement to subsequent

---

[7] Because Plaintiff notes that "[a]s part of his subscription, he receives emails and other news from *Bleacherreport.com*," Compl. ¶ 56, the Court may consider the email notice submitted with the Request for Judicial Notice in resolving the motion. *Moreland v. Ad Optimizers, LLC.*, No. CV 13-00216 PSG, 2013 WL 3786311, at *2 (N.D. Cal. July 18, 2013) (taking judicial notice of "an exemplar email" that was "referenced generally in the complaint" where its authenticity was not in dispute).

1  modifications with notice, have provided for a class waiver for over seven years.

2  **LEGAL STANDARD**

3    To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

4  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

5  662, 678 (2009) (citation omitted).  In determining a complaint's adequacy, a court must disregard

6  conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and

7  determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a

8  plausible—as opposed to merely conceivable—claim for relief.  *Id.* at 679.  On a motion to dismiss,

9  the court does not "assume the truth of legal conclusions merely because they are cast in the form

10  of factual allegations." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

11  In VPPA actions, courts in this District have recognized that a complaint will not suffice if it

12  "tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Stark v. Patreon, Inc.*, No.

13  22-CV-03131-JCS, 2022 WL 7652166, at *4 (N.D. Cal. Oct. 13, 2022) (citation omitted); *see also*

14  *Walker v. Meta Platforms, Inc.*, No. 22-cv-02442-JST, at 4-5 (N.D. Cal. Mar. 3, 2023), ECF No.

15  42 (citation omitted) ("[w]here a complaint pleads facts that are merely consistent with a

16  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

17  relief.").

18    Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or

19  any redundant, immaterial, impertinent, or scandalous matter."  The "central function of a Rule

20  12(f) motion is 'to avoid the expenditure of time and money that must arise from litigating spurious

21  issues by dispensing with those issues prior to trial.'" *Stearns v. Select Comfort Retail Corp.*, 763

22  F. Supp. 2d 1128, 1139 (N.D. Cal. 2010) (citation omitted).  "[W]hether to grant a motion to strike

23  lies within the sound discretion of the district court." *Woods v. Google LLC*, No. 5:11-CV-01263-

24  EJD, 2018 WL 5292210 (N.D. Cal. Oct. 23, 2018) (citation omitted).  In addition, Rule 23(d)(1)(D)

25  provides that "the court may issue orders that . . . require that the pleadings be amended to eliminate

26  allegations about representation of absent persons and that the action proceed accordingly."  Where

27  a "complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant

28  may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d

978, 990 (N.D. Cal. 2009); *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043, 1048 (N.D. Cal. 2014) (granting motion to strike class allegations under Rules 12(f) and 23(d)(1)(D) and explaining "[c]lass allegations can be stricken at the pleading stage.").

## ARGUMENT

### I.   Plaintiff Fails to Plausibly Allege that Bleacher Report Violated the VPPA.

#### A.   Plaintiff Does Not Plausibly Allege That Bleacher Report Provided Prerecorded Videos to Him.

As another court in this District recently recognized, "a video must be prerecorded to fall within the VPPA's definition of 'similar audio visual materials.'" *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *6; *see also Louth v. NFL Enters. LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (finding that "live content" should not be included as "similar audio visual material" under the VPPA).  Bleacher Report offers both live and pre-recorded videos.[8]  Because Plaintiff never specifies that the Bleacher Report videos he watched were prerecorded (as opposed to live-streamed), he has not plausibly alleged Bleacher Report provided "similar audio visual materials" to him as is required for his claim.  18 U.S.C. § 2710(a)(4).  His claim should be dismissed on this basis as other courts in this district have held.  *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *6 (dismissing claim where plaintiff failed to specify whether the videos they watched were "broadcast live or prerecorded"); *Walker v. Meta Platforms, Inc.*, No. 22-cv-02442-JST, at 11 (granting motion to dismiss VPPA claim where plaintiff failed to allege he accessed prerecorded videos).

#### B.   Plaintiff Has Not Plausibly Alleged Bleacher Report Disclosed Information Reflecting That He "Requested or Obtained" Specific Video Materials.

As noted above, the VPPA defines PII as information "which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  Plaintiff's VPPA claim fails because he does not plausibly allege that

---

[8] For example, Bleacher Report offers live-streamed pay-per-view events on its website.  Ex. H (Bleacher Report, *All Elite Wrestling PPV*, https://bleacherreport.com/videos/all-elite-wrestling-ppv#main).  It also offers pre-recorded videos.  *See, e.g.,* Ex. G at 3 (Erin Walsh, *Report: Bears Trade No. 1 Pick in 2023 NFL Draft to Panthers for 4 Picks, DJ Moore*, https://bleacherreport.com/articles/10068385-report-bears-trade-no-1-pick-in-2023-nfl-draft-to-panthers-for-4-picks-dj-moore).

1   information showing that he "requested or obtained specific video materials or services" was

2   disclosed.  In *Martin v. Meredith Corp.*, No. 22CV4776 (DLC), 2023 WL 2118074, at *3 (S.D.N.Y.

3   Feb. 17, 2023), the court found that the plaintiff failed to state a claim under the VPPA on this

4   basis, explaining that his complaint "[left] off essential information for a VPPA claim, including at

5   least . . . the name of the 'specific video materials' on the page [and] whether the website visitor

6   'requested or obtained' any videos at all, or instead merely read an article on the webpage."  Here,

7   Plaintiff's Complaint similarly fails to establish that information reflecting he requested or obtained

8   specific videos was disclosed because at a minimum, he never identifies by name any Bleacher

9   Report videos he watched.  Compl. ¶ 57.

10      In addition, many videos on Bleacherreport.com play automatically when individuals scroll

11   through articles to read them.  *E.g.,* Ex. G at 3 (Erin Walsh, *Report: Bears Trade No. 1 Pick in 2023*

12   *NFL Draft to Panthers for 4 Picks, DJ Moore*, https://bleacherreport.com/articles/10068385-report-

13   bears-trade-no-1-pick-in-2023-nfl-draft-to-panthers-for-4-picks-dj-moore).  While Plaintiff alleges

14   he "viewed Video Media on *Bleacherreport.com's* website and App" (Compl ¶ 57), he does not

15   allege whether the videos he watched played automatically, or whether he clicked on videos to

16   watch them.  He therefore fails to establish he sought out and actively elected to view videos, a

17   prerequisite to having "requested or obtained" specific video materials or services.  *Request*,

18   Merriam-Webster.com,  https://www.merriamwebster.com/dictionary/request (defining "request"

19   as  "the  act  or  instance  of  asking  for  something");  *Obtain*,  Merriam-Webster.com,

20   https://www.merriam-webster.com/dictionary/obtain ("to gain or attain usually by planned action

21   or effort.").[9]  Indeed, Plaintiff could have "merely reviewed an article on [a] page [containing a

22   video] or opened the page and done nothing more," which would not suffice here.  *See Martin*,

23   2023 WL 2118074, at *4.

24      Plaintiff  has  therefore  failed  to  plausibly  allege  that  information  reflecting  that  he

25   "requested or obtained" specific video materials was disclosed, and his VPPA claim should

26   accordingly be dismissed.  *See id.*

27

28   [9] The Court may take judicial notice of dictionary definitions.  *See Bielousov v. GoPro, Inc.*, No.
     16-CV-06654-CW, 2017 WL 3168522, at *4 (N.D. Cal. July 26, 2017).

**C.      Plaintiff Has Not Plausibly Alleged Bleacher Report Disclosed Information That Would Allow an Ordinary Person to Identify Him.**

The VPPA's definition of PII also includes an identifying component, covering information "which *identifies* a person" as having requested or obtained videos from a video tape service provider.   18 U.S.C. § 2710(a)(3) (emphasis added).   Attempting to satisfy the identifying component of the VPPA's definition of PII, Plaintiff points to the alleged disclosure of Bleacher Report visitors FIDs through the use of "FID cookies."   Compl. ¶ 42-43.   Although he never identifies the FID cookie at issue by name, the FID is transmitted by way of the c_user cookie.   *See Hulu*, 86 F. Supp. 3d at 1093-94 (detailing how clicking the "Like" button would cause a c_user cookie containing an FID to be sent to Meta).

Meta places this c_user cookie on individuals' browsers and receives information from it. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) ("Facebook puts cookies on visitors' computers.   It uses these cookies to store information about each visitor—for instance, the 'c _user' cookie is a unique identifier"), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *5 (N.D. Cal. June 17, 2014) ("Facebook sets the c _user cookie"); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015) ("[T]hrough its 'c _user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID.").   Indeed, the c_user cookie is by definition Facebook's cookie.   Meta, *Cookies Policy*, https://www.facebook.com/policy/cookies/ (stating "we use the c_user" cookie).   To the extent this cookie was transmitted, it was therefore transmitted by Facebook to itself; Bleacher Report did not disclose it.   *See Hulu*, 86 F. Supp. 3d at 1093 n.3 ("The only servers that access a particular cookie are those associated with the domain that wrote the cookie.   In other words, [a website] can read only [its own] cookies, while Facebook can read only facebook.com cookies.").   Vaguely pointing to the c_user cookie is therefore not enough to plausibly allege that Bleacher Report discloses PII to Meta.

Additionally, Plaintiff's Complaint contains no specific allegations demonstrating that any "ordinary person can look up the user's Facebook profile and name" by using the c_user cookie, Compl. ¶ 43, as is required for him to plausibly allege that PII was disclosed.   *Eichenberger*, 876

F.3d at 985 (citation omitted) (finding PII "means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior'" and dismissing VPPA claim that was based on disclosure of Roku device serial numbers and video watching information); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) (emphasis added) ("To an average person, an IP address or a *digital code in a cookie file* would likely be of little help in trying to identify an actual person.").  Moreover, whether Meta can read its own cookie does not bear on whether Bleacher Report disclosed PII, because the abilities of a recipient do not dictate what constitutes PII.  *Eichenberger*, 876 F.3d at 985 (explaining the statute "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it," and noting PII "must have the same meaning without regard to its recipient's capabilities.").

Plaintiff has therefore failed to plausibly allege that Bleacher Report disclosed his PII.

**D.  Plaintiff Has Not Plausibly Alleged Defendant "Knowingly" Disclosed PII.**

Even if Plaintiff did adequately allege that Bleacher Report disclosed PII, he has not alleged facts establishing the scienter requirement under the VPPA.  18 U.S.C. § 2710(b)(1).  To satisfy this pleading requirement, Plaintiff must allege facts making it plausible that Bleacher Report "knowingly" disclosed information to Meta identifying specific individuals as having "requested or obtained specific video materials," which he has not done here.  *Hulu*, 86 F. Supp. 3d at 1091, 1105 (dismissing VPPA claim against Hulu where plaintiffs could not establish whether "Hulu knew that Facebook might link the user-identifying information in the c_user cookie with title-bearing watch-page addresses" to construct PII).  "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos."  *Id.* at 1095.

Like the unsuccessful *Hulu* plaintiffs, Plaintiff here does not plausibly allege that Bleacher Report knew that c_user cookies and video watching data were transmitted such that Meta did "combine those discrete things to reconstruct PII."  *Id.* at 1098.  At most, Plaintiff's Complaint contains bare allegations that Bleacher Report disclosed this information in "one data point" to Meta.  Compl. ¶¶ 5, 48.  But it cannot be that Bleacher Report disclosed this information in "one

data point," because, as the Court can confirm with judicially noticeable information, the c_user cookie is disclosed by Meta to itself. *See, e.g.,* Meta, *Cookies Policy*, https://www.facebook.com/policy/cookies/. Furthermore, since Meta—not Bleacher Report— placed the cookie allegedly containing Plaintiff's FID and is not alleged to have shared this information with Bleacher Report, Plaintiff cannot plausibly allege that Bleacher Report knowingly disclosed his PII.

Seemingly recognizing these shortcomings in his allegations, Plaintiff instead suggests that Bleacher Report's knowledge can be inferred from "the functionality of the pixel," including because the Pixel enables Bleacher Report to run targeted advertising. Compl. ¶ 46. But allegations pointing to the Pixel's functionality do not suffice, because such allegations amount to a claim that a defendant transmitted information sufficient for reconstructing PII. *See Hulu*, 86 F. Supp. 3d at 1098; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181, 183 (S.D.N.Y. 2015) (if a third party has to "reverse engineer" PII, there can be no knowing disclosure). Bleacher Report is responsible for grasping the "nature of the information actually disclosed," not "the informational capabilities of any third-party recipient" like Meta. *See Robinson*, 152 F. Supp. 3d at 181-82; *Eichenberger*, 876 F.3d at 985 ("[T]he statute views disclosure from the perspective of the disclosing party."). If, as here, a defendant "did not think it was conveying PII, then there could be no knowledge of the conveyance." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) (explaining that whether the defendant "knew what Facebook might do with the information" was irrelevant to the VPPA knowledge inquiry), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017).[10]

For these reasons, Plaintiff has failed to plausibly allege that Bleacher Report knowingly disclosed PII.

**E.     Bleacher Report is Not a Video Tape Service Provider.**

To bring a VPPA claim, an individual must purchase, rent, or subscribe to goods or services

---

[10] Although the court in *Stark v. Patreon, Inc.* assessed alleged violations of the VPPA occurring via the Pixel and concluded the plaintiff there had plausibly alleged that the defendant knowingly disclosed PII, the court did not consider the specific arguments that Bleacher Report raises here because the defendant did not make the same arguments. *See* 2022 WL 7652166, at *2-3.

from a "video tape service provider."  A "video tape service provider" is defined, in relevant part, as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. §§ 2710(a)(1), (a)(4).  Courts within the Ninth Circuit have not determined whether a sports news and commentary website like Bleacherreport.com falls within the statute's ambit.[11]  However, courts within the Ninth Circuit have recognized that not all entities that deliver videos are properly considered to be "engaged in the business of delivering video content," as is required to be considered a video tape service provider.  *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).  To be a video tape service provider, conveyance of video content must be a "focus of the defendant's work," and developers of certain "products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider."  *Id.* at 1221-22; *see also* S. REP. 100-599, at 12 (the definition of PII "includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services [sic] does not mean that all of its products or services are within the scope of the bill.").

In defining a "video tape service provider," the VPPA further specifically contemplates the distribution of physical goods sold by video rental stores, namely "prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(1).  "Similar" means "[n]early corresponding; resembling in many respects; somewhat like; having a general likeness." *Similar*, Black's Law Dictionary (6th ed. 1990).  "Similar audio visual materials" thus can refer to new storage media that can also be used to deliver movies. *See* S. REP. No. 100-599, at 12 (identifying "laser discs, open-reel movies, or CDI technology" as "similar audio visual materials."). The term does not, however, encompass all audio visual materials, and it certainly does not encompass the short video clips that form part of the sports news and commentary offering at issue here.

Indeed, the federal government recently explained that "the VPPA does not impose liability on any entity other than a 'video tape service provider' for revealing [PII]—including any *news*

---

[11] In *Eichenberger*, the Ninth Circuit dismissed a VPPA action against ESPN but did not explicitly consider whether ESPN was properly considered a "video tape service provider."  *See* 876 F.3d 979.

*organization*."  United States of America's Memorandum in Support of the Constitutionality of the Video Privacy Protection Act, *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, at 18 (N.D. Cal. May 27, 2022), ECF No. 49-1 (emphasis added).[12]  Applying the VPPA here—where Plaintiff himself has described Bleacherreport.com as "an on-line news publication"—would clearly stretch the statute beyond its intended bounds.  Compl. ¶ 55; 134 Cong. Rec. S5397-01 (1988) (emphasis added) (explaining the VPPA ensures "that individuals will maintain control over their personal information when renting or purchasing *a movie* . . . .").

Moreover, because the VPPA was codified as a criminal statute with civil penalties, it must be construed narrowly so it is not applied in situations not clearly contemplated by the legislature.[13] *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (if a statute has criminal and non-criminal applications, the rule of lenity must be applied consistently to both).  Bleacher Report's sports news and commentary offering is a far cry from the video rental store that disclosed Judge Bork's rental history to a reporter, making application of the VPPA entirely inappropriate.  *See Eichenberger*, 876 F.3d at 985 ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage.").[14]

## II.    In Any Event, Because Plaintiff Consented to a Binding Class Waiver, the Court Should Dismiss And/Or Strike His Class Allegations.

Plaintiff's allegations indicate that he created a Bleacher Report account in 2007 (Compl. ¶ 57), which would have required him to check a box confirming he was agreeing to the August 24, 2007 Terms of Use.  *See* Ex. A at 1 (2007 Account Sign-Up).  Such online "clickwrap" agreements are enforceable like any other contract.  *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (enforcing Terms of Use where website "displayed the phrase: 'By continuing past this page, you agree to our Terms of Use'"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017 WL 7309893, at *3, *13 (S.D.N.Y. Nov. 20, 2017) (explaining courts

---

[12] The Court may "take judicial notice of court filings." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, n.6 (9th Cir. 2006).

[13] Title 18 of the U.S. Code deals with "Crimes and Criminal Procedure."

[14] In addition, to the extent Plaintiff's claim is based on a newsletter sign-up (Compl ¶ 20), his purported "subscription" is "distinct and set apart" from any video content on Bleacherreport.com and does not suffice here.  *Austin-Spearman*, 98 F. Supp. 3d at 671.

"have routinely upheld" agreements that "require a user to click an 'I agree' button after being presented with terms"), *adopted by*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).  Moreover, the website provided reasonable notice of Bleacher Report's Terms of Use because making terms and conditions available via hyperlink, as Bleacher Report did here, provides reasonable notice.  *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-04825-JW, 2005 WL 756610, at *2 (N.D. Cal. Apr. 1, 2005) (finding terms were reasonably communicated to the user where the Terms of Use were underlined and hyperlinked); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (finding terms were "reasonably communicated" to plaintiff where she was required to check a box "next to the statement 'I confirm that I have read and agreed to the Terms and Conditions of Service' (with a hyperlink to the Terms and Conditions of Service over those words).").

In those Terms of Use, Bleacher Report reserved the right "to modify or replace the Terms of Use," and the Terms provided that "Use of the Service by you following such notification constitutes your acceptance of the terms and conditions of the Terms of Use as modified."  *See* Ex. A at 2 (August 24, 2007 Terms of Use).  Courts in the Ninth Circuit have recognized that provisions allowing for modification of website terms can be enforced where the business provides notice of changes.  *See Wilson v. United Health Grp., Inc.*, No. 2:12-CV-01349-MCE, 2012 WL 6088318, at *3 (E.D. Cal. Dec. 6, 2012) (citation omitted) ("While contracts require mutuality, it is not an 'illusory agreement' when one party reserves the discretionary power to modify personnel terms with written notice because the party is still required to act fairly and in good faith");  *see also Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 959 (N.D. Cal. 2015) (quoting *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir. 2015)) (explaining that the Ninth Circuit had indicated "unilateral modification provisions 'are not substantively unconscionable . . . .'"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (noting without objection that an arbitration agreement authorized AT&T to make unilateral amendments); *see also Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (explaining the "unilateral right to modify an agreement, without more, does not render the agreement unenforceable.").

During the period Plaintiff allegedly viewed "Video Media via Bleacherreport.com's

website and App" from "2007 to the present," Bleacher Report provided notice of updates to its Terms of Use on several occasions.  In 2016, 2020, and in late 2022 and early 2023, Bleacher Report utilized pop-ups on its website which notified individuals that by using the website, they were agreeing to the Terms of Use.  These pop-ups would persist until an individual clicked an 'X' button to permanently close the pop-up.  The most recent pop-up also provided that "By clicking 'X', you acknowledge you read and agree to the updated Terms."  *See* Ex. C at 1 (2016 Pop-Up), Ex. D at 1 (2020 Pop-Up), Ex. E at 1 (Late 2022/Early 2023 Pop-Up).  Because the pop-ups required Plaintiff to "affirmatively acknowledge the agreement" by clicking 'X,' Plaintiff should be deemed to have agreed to these class action waivers included in the updated Terms of Use.  *Lee*, 817 F. App'x at 394; *see also Shen v. United Parcel Serv.*, No. 2:21-CV-08446-MCS-E, 2022 WL 17886012, at *4 (C.D. Cal. Nov. 21, 2022) ("Shen and ShipGadget had inquiry notice of the updated term by virtue of their assent to the pop-up providing notice of the update.").  Plaintiff omits these pop-ups from his Complaint, including the most recent pop-up which appeared on the website in late 2022 and early 2023.[15]

Bleacher Report also provided notice of its most recent update to the Terms of Use via email, in which it stated that it had updated its Terms of Use and provided links to the Terms of Use.  Clicking the links led individuals to the Terms, which they could easily scroll through and read.  *See* Ex. F (December 2022 Email Notice of Updated Terms).  Courts have recognized that communications such as Bleacher Report's provide sufficient notice to recipients of updates to a business's terms.  *See Hart v. Charter Commc'ns, Inc.*, No. SACV170556DOCRAOX, 2017 WL 6942425, at *5 (C.D. Cal. Nov. 8, 2017) (finding internet service provided adequate notice of changes to its customer agreement via mailings advising recipients that a new agreement applied to them), *aff'd*, 814 F. App'x 211 (9th Cir. 2020); *Sacchi v. Verizon Online LLC*, No. 14-CV-423-RA, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) (finding that there was sufficient notice of

---

[15] Plaintiff's discussion of the current account sign-up flow in the Complaint is a distraction at best.  He alleges he signed up in 2007, not using the current sign-up flow, so his entire discussion of that issue is irrelevant.  Compl. ¶ 56.  Furthermore, if anything, the sign-up flow to which he points requires individuals to agree to the Terms of Use and makes the Terms available via hyperlink (*id.*), and he can be deemed to have consented to the Terms for this reason as well.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401-04 (2d Cir. 2004) (enforcing online agreement where defendant "admitted that . . . it was fully aware" of the agreement's terms).

an amended agreement when it was posted to Verizon's website and referred to in an email sent to plaintiff).

Bleacher Report's Terms of Use provide that "each party may bring claims . . . against the other only in an individual capacity, and not participate as a plaintiff, claimant, or class member in any class, collective, consolidated . . . or representative proceeding." Ex. E at 19 (December 21, 2022 Terms of Use). Prior versions of the Terms of Use have contained a nearly identical class waiver, including the December 19, 2019 Terms, which provided that "You and we agree that each may bring claims against the other only in your or our individual capacity, and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding." Ex. D at 21 (December 19, 2019 Terms of Use). The October 25, 2015 Terms similarly provided that "we and you will resolve any disputes, claims, or controversies on an individual basis," and "any claims brought under this Agreement in connection with the Service will be brought in an individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or representative proceeding." Ex. C at 16 (October 25, 2015 Terms of Use).[16] Thus, Plaintiff has been on notice of the class waiver for many years.

Courts regularly enforce class waivers like the one contained in Bleacher Report's Terms of Use. *See, e.g., Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) ("We have interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law . . . ."). Courts have both dismissed and in other cases stricken class allegations where plaintiffs have agreed to class waivers. *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *14-16 (N.D. Cal. Aug. 22, 2022) (striking class allegations based on plaintiff's agreement to a class waiver provision); *Birdsong v. AT&T Corp.*, No. C12-6175 TEH, 2013 WL 1120783, at *4-6 (N.D. Cal. Mar. 18, 2013) (dismissing collective action claim based on plaintiff's agreement to a class waiver); *Lu v. AT & T Servs., Inc.*, No. C 10-05954 SBA, 2011 WL 2470268, at *3-5 (N.D. Cal. June 21, 2011) (same); *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876, at *4 (N.D. Cal. Nov. 30, 2018) (dismissing

---

[16] While the Terms currently call for application New York law, the class waiver should be enforced to dismiss and/or strike Plaintiff's class claims under either New York or California law as explained herein. Ex. E at 13 (December 21, 2022 Terms of Use).

class claims based on class waiver); *Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-CV-00771-JSW, 2019 WL 6835717, at *4 (N.D. Cal. Oct. 23, 2019) (same); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303 (N.D. Cal. 2018) (same); *Schmidt v. Samsung Electronics America, Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *6 (W.D. Wash. May 25, 2017) (same); *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *1, *9 (E.D.N.Y. Mar. 9, 2018) (same); *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84-85 (2d Cir. 2020) (summary order) (finding the "class-waiver provision bars [plaintiff] from the proceeding on a class basis[,]" and affirming dismissal). Because Plaintiff agreed to the Bleacher Terms of Use, and those Terms of Use contained a class action waiver for almost a decade, the Court should dismiss and/or strike his class claims.

## CONCLUSION

For the foregoing reasons, Bleacher Report respectfully requests that the Court dismiss Plaintiff's claim in its entirety.  Bleacher Report further requests that the Court dismiss and/or strike Plaintiff's class allegations based on his agreement to the class action waiver.

1   Dated: April 6, 2023                     Respectfully submitted,

2

3                                    By:   _/s/ David R. Singh_
                                          David R. Singh (Bar No. 300840)
4                                         david.singh@weil.com
                                          Amy Tu Quyen Le (Bar No. 341925)
5                                         amy.le@weil.com
                                          WEIL, GOTSHAL & MANGES LLP
6                                         201 Redwood Shores Parkway, 6th Floor
                                          Redwood Shores, CA 94065-1134
7                                         Telephone: (650) 802-3000
                                          Facsimile: (650) 802-3100

8
                                          David L. Yohai (admitted *pro hac vice*)
9                                         david.yohai@weil.com
                                          Blake J. Steinberg (admitted *pro hac vice*)
10                                        blake.steinberg@weil.com
                                          WEIL, GOTSHAL & MANGES LLP
11                                        767 Fifth Avenue
                                          New York, NY 10153
12                                        Telephone:(212) 310-8000
                                          Facsimile: (212) 310-8007

13
                                          *Attorneys for Defendant Bleacher Report, Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28