UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABARI SELLERS,<br><br>        Plaintiff,<br><br>    v.<br><br>BLEACHER REPORT, INC.,<br><br>        Defendant. | Case No. 23-cv-00368-SI<br><br>**ORDER RE MOTION TO DISMISS AND/OR STRIKE; MOTION TO STAY DISCOVERY**<br><br>Re: Dkt. Nos. 22, 25 |

Before the Court are defendant's motion to dismiss and/or strike the complaint and motion to stay discovery pending resolution of the motion to dismiss, both of which were argued on July 25, 2023. For the reasons discussed below, the motion to dismiss and/or strike is **DENIED** except that any claims based on live streaming video are dismissed. The motion to stay discovery is **DENIED** as moot.

**BACKGROUND**

Plaintiff brings a putative class action alleging that defendant Bleacher Report, Inc. violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), by knowingly disclosing its digital subscribers' video viewing information with Meta Platforms, Inc. ("Facebook"). Complaint, Dkt. No. 1. With some exceptions, the VPPA provides for damages when "[a] video tape service provider . . . knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Plaintiff alleges the following facts, which are taken as true for the purposes of a Motion to Dismiss.

Defendant Bleacher Report owns and operates a website called Bleacherreport.com, which

1    publishes content about sports and sports culture. Compl. ¶ 13.  The website's content includes
2    articles and videos.  *Id.* ¶¶ 13, 50.  Bleacherreport.com can also be accessed through a mobile App.
3    *Id.* ¶ 25.  Among the content published by Bleacherreport.com is an online newsletter users can
4    subscribe to.  *Id.* ¶ 20.

5         Bleacherreport.com employs the Facebook pixel, a tool that tracks consumers' actions on
6    websites and reports those actions to Facebook.  *Id.* ¶¶ 40–41.  The pixel allows Facebook to build
7    detailed profiles about users, which it uses to facilitate targeted advertisements.  *Id.*  ¶ 41.  When a
8    Bleacherreport.com digital subscriber watches video media on the website, the Facebook pixel
9    sends Facebook information about the viewer including their identity, the video content name, the
10   video URL, and the user's Facebook ID ("FID").  *Id.*  The information shared is not anonymized;
11   it is "tied to unique identifiers that track specific Facebook users."  *Id.* ¶ 48.  Plaintiff contends that
12   the defendant knowingly discloses personal viewing information through the pixel.  *Id.* ¶¶ 46.

13        To subscribe to the online newsletter, users provide personal information including their
14   first and last name, email address, phone number, and IP address, and must press a conspicuous
15   green button marked "Continue."  *Id.*  ¶¶ 20, 26.  Below the green "Continue" button, there is
16   smaller gray font with purple links instructing users, "By selecting 'Continue,' you agree to the
17   terms and conditions of the Bleacher Report Terms of Use and Privacy Policy."  *Id.*  Plaintiff
18   alleges that this instruction is nonbinding "because it is an unenforceable browserwrap agreement"
19   and because the text directing users to the Terms of Use ad Privacy Policy are "deemphasized by
20   the overall design of the webpage."  *Id.* ¶¶ 21–22.  Plaintiff contends that there is no "separate
21   legal document that notifies Defendant's subscribers that it will record their Personal Viewing
22   Information" and share that information with third parties.  *Id.* ¶ 24.

23        Plaintiff acknowledges that Bleacher Report's Privacy Policy states that it collects
24   "different types of information" about users including personal information such as name, phone
25   number, postal address, email address, and payment information; technical information such as
26   device identifier and IP address; and usage information, including content the user has been shown
27   or clicked on.  *Id.*  ¶ 31.  The Privacy Policy also states it may combine that information with
28   information from third-party websites.  *Id.* ¶ 32.  And the Privacy Policy states that Bleacher

United States District Court
Northern District of California

1  Report may share information with third parties but notes that it will "provide [users] with an
2  opportunity to opt out of such uses." *Id.* ¶ 33. However, this section of the Privacy Policy is not
3  "separate from any form setting forth other legal obligations of the consumer." *Id.* ¶ 33. A section
4  of the Privacy Policy called "Your Choices and Controls" purports to obtain consent to disclose
5  personally identifiable information forever. *Id.* ¶ 36.

6        Plaintiff claims that defendant does not provide a clear and conspicuous opportunity for
7  subscribers to withdraw from information disclosures. *Id.* ¶ 37. The website does provide a link
8  "[b]uried in a section of the Privacy Policy" allowing users to opt out from three types of
9  advertising but does not clearly explain the scope of the opt out. *Id.* Plaintiff contends that the
10 Privacy Policy does not meet the requirements of the VPPA.

11       Plaintiff has been a digital subscriber of Bleacherreport.com since 2007 and has had a
12 Facebook account since 2005. *Id.* ¶¶ 56. He contends that he never consented to
13 Bleacherreport.com providing his personal viewing information to Facebook and was never given
14 notice that it does so or an opportunity to opt out. *Id.* ¶ 58. Nonetheless, defendant knowingly
15 provided his and other users' personal viewing information to Facebook. *Id.*

16       Bleacher Report moves to dismiss, arguing that plaintiff failed to plausibly allege that
17 Bleacher Report violated the VPPA and, in the alternative, plaintiff agreed to a class action waiver
18 so his class allegations should be dismissed. Motion, Dkt. No. 22. Plaintiff opposes. Opposition,
19 Dkt. No. 44. A hearing was held on July 25, 2023.

**LEGAL STANDARD**

22       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
23 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
24 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
25 face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard
26 requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant
27 has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require
28 "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

1  relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

2      In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

    Dismissal can be granted with or without leave to amend. Leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## DISCUSSION

### I.  Applicability of the VPPA

    "[T]o plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). A "video tape service provider" is a person or entity who is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," or to whom a disclosure was made under subsection (b)(2)(D) or (E) of the VPPA. 18 U.S.C. § 2710(a)(4).

    Defendant argues plaintiff failed to plausibly allege that Bleacher Report violated the VPPA because (a) the complaint does not specify that the videos Bleacher Report provided to plaintiff were prerecorded, (b) plaintiff does not adequately allege that he requested or obtained specific videos, (c) plaintiff does not plausibly allege that Bleacher Report disclosed information that would allow an ordinary person to identify him, (d) plaintiff has not adequately alleged scienter, and (e) Bleacher Report is not a video tape service provider. Dkt. No. 22. The Court takes these arguments in turn.

4

### A. Pre-Recorded Videos

Bleacher Report first argues that plaintiff failed to specify whether he watched live or pre-recorded videos on Bleacher Report. Mtn. at 8. Bleacher Report argues that it provides both live and pre-recorded videos on its website and that the VPPA does not apply to live content. *Id.* Plaintiff argues that this is only a basis to dismiss aspects of the VPPA claim premised on the consumption of live content. Opp. at 14.

The VPPA applies to providers of "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Although the Ninth Circuit has not weighed in on whether the term "similar audio visual materials" encompasses live content, lower courts have consistently held that it does not. *See Walker v. Meta Platforms, Inc.*, No. 22-CV-02442-JST, 2023 WL 3607282, at *5 (N.D. Cal. Mar. 3, 2023) (collecting cases). Plaintiff concedes that live video is excluded from the VPPA but argues that this is a basis to dismiss only those aspects of the complaint premised on the consumption of live content. Opp. at 14 (quoting *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022)). At the hearing, plaintiff indicated that he would be willing to amend the complaint to allege that he watched pre-recorded videos.

Plaintiff's claims are dismissed only to the extent they rely on the consumption of live content. *See Louth v. NFL Enterprises LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022). While plaintiff has not explicitly stated that the videos he watched were pre-recorded, the Court reads the complaint in the light most favorable to plaintiff and finds that his claims raise the inference that defendant provided prerecorded video content. *See Walker v. Meta Platforms, Inc.*, No. 22-CV-02442-JST, 2023 WL 3607282, at *8 (N.D. Cal. Mar. 3, 2023) (finding that court could infer plaintiff's claims included prerecorded content but dismissing for different reasons).

### B. "Requested or Obtained" Video Materials

Bleacher Report argues that the complaint fails because plaintiff does not name the videos he watched and does not show that he "actively elected to view videos," rather than watching videos that played automatically. Mtn. at 9. The VPPA defines "personally identifying

5

1  information" as information that identifies a person as having "requested or obtained specific
2  video materials or services." 18 U.S.C. § 2710(a)(3). Bleacher Report argues that to satisfy the
3  "specific video materials or services" requirement, plaintiff must name the videos he watched.
4  Mtn. at 9. And Bleacher Report argues that in order to plead that he "requested or obtained" video
5  materials, plaintiff must allege that he "actively elected to view videos." *Id.*

6  Bleacher Report's assertion that plaintiff must name the videos he obtained relies entirely
7  on *Martin v. Meredith Corp.*, No. 22CV4776 (DLC), 2023 WL 2118074, at *4 (S.D.N.Y. Feb. 17,
8  2023). The plaintiff in that case alleged that the website People.com employed a Facebook pixel
9  to send "the Facebook ID and the name of the webpage that a user accessed." *Id.* at *3. The court
10 dismissed the claim because the alleged disclosure was limited to the name of a webpage that may
11 contain a video, not the name of the video itself. *Id.* Here, however, plaintiff alleges that Bleacher
12 Report uses the Facebook pixel to disclose "the content name of the video the digital subscriber
13 watched, the URL, and the digital subscribers' FID." Compl. ¶ 50. This is sufficient at the
14 pleadings stage. *See Harris v. Pub. Broad. Serv.*, No. 1:22-CV-2456-MLB, 2023 WL 2583118, at
15 *6 (N.D. Ga. Mar. 20, 2023) (finding allegation that defendant "sends the content name of the
16 video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook"
17 sufficient to survive motion to dismiss).

18 Bleacher Report also contends that plaintiff must have "actively elected to view videos" in
19 order to have "requested or obtained" them. Mtn. at 9. It contends that plaintiff must distinguish
20 between videos he clicked on and videos that auto-played when he clicked on an article. *Id.* This
21 argument ignores the plain language of the statute. To "request" something is to actively seek it
22 out, but to "obtain" something is to gain it, not necessarily by choice. Bleacher Report itself cites
23 Merriam Webster's definition of "obtain" as "to gain or attain *usually* by planned action or effort."
24 Mtn. at 9 (emphasis added) (quoting *Obtain*, Merriam-Webster.com, https://www.merriam-
25 webster.com/dictionary/obtain). "Usually" means not always, so by this definition, a thing can be
26 "obtained" without planned action or effort. Further, if the Court were to read "obtained" to
27 require "requested," then "obtained" in the statute would be surplusage because every video
28 obtained would first have been requested.

6

Because plaintiff has sufficiently alleged that he requested or obtained the videos in question, defendant's argument fails.

### C. Disclosure of Personally Identifying Information

Defendant next argues that plaintiff has not adequately alleged that Bleacher Report disclosed information that would allow an ordinary person to identify plaintiff. Defendant argues that because the pixel belongs to Facebook, it is Facebook and not Bleacher Report disclosing the information. Further, it argues that the information disclosed is not information that an ordinary person could use to identify plaintiff.

#### 1. Whether Bleacher Report Disclosed Information

Defendant argues that the information alleged to have been disclosed to Facebook was transmitted by Facebook itself, not Bleacher Report, because it is Facebook who places the "c_user" cookie on users' browsers. Mtn. at 10. But the complaint alleges that Bleacher Report transmits the information to Facebook by incorporating the pixel into its website. Compl. ¶ 43. The Court must take these factual allegations as true and draw all reasonable inferences in plaintiff's favor. Bleacher Report's argument is a factual dispute better suited to summary judgment or trial than a motion to dismiss. *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (rejecting argument that Facebook rather than defendant places c_user cookie on user's web browser as premature at motion to dismiss stage); *Belozerov v. Gannett Co.*, No. CV 22-10838-NMG, 2022 WL 17832185, at *4 (D. Mass. Dec. 20, 2022) (same).

#### 2. Whether the Information Was Personally Identifying

The Ninth Circuit has held that " 'personally identifiable information' means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.' " *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)). Defendant argues

7

1    that the information transferred is the c_user cookie, which an ordinary person could not use to
2    identify a person because the c_user cookie cannot be read by the ordinary person. Mtn. at 10.
3    Plaintiff argues that the relevant information is the FID, not the cookie, and that the FID can be
4    used by an ordinary person to identify a specific individual. Opp. at 10.

5          The Court agrees with plaintiff's argument. The FID is a unique identifier that is enough,
6    on its own, to identify a person. *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348
7    (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("Unlike anonymized device serial
8    numbers disclosed in *Robinson*, Facebook need not link the disclosed FID to personal information
9    obtained elsewhere. The FID itself represents a particular individual."). A court in this district
10   reasoned:

> [A] Facebook user—even one using a nickname—generally is an identified person on a social network platform. The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string is the Facebook user name. There is a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers.

*In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014).

      Bleacher Report's contention that the relevant information is the c_user cookie rather than the FID is unavailing. Bleacher Report relies on *Eichenberger v. ESPN, Inc.*, in which the Ninth Circuit held that "personally identifiable information must have the same meaning without regard to its recipient's capabilities." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). In *Eichenberger*, the information at issue was a device serial number, which the court found "*cannot* identify an individual unless it is combined with other data in [the recipient's] possession—data that [defendant] never disclosed and apparently never even possessed." *Id.* at 986. Here, the information transmitted is enough, on its own, to identify a person. *In re Hulu Priv. Litig*, 2014 WL 1724344, at *14. Although the mode through which the information was transmitted may have been the c_user cookie, the information itself – the FID – is information sufficient to identify a person.

8

### D. Scienter

Bleacher Report next argues that plaintiff has insufficiently pled the scienter element of the VPPA. Mtn. at 11–12. The VPPA punishes disclosures only when they are made "knowingly." 18 U.S.C. § 2710(b)(1). Bleacher Report's argument here is in part based on the same argument it made above – that the disclosure of information was from Facebook to Facebook. Mtn. at 11–12. For the same reasons discussed above, that argument is a factual one not suited to the motion to dismiss stage.

The complaint alleges that Bleacher Report deliberately installed the Facebook pixel on its website. Compl. ¶¶ 4, 41. It further alleges that Bleacher Report did this in order to improve its targeted advertising and increase its revenue. Compl. ¶¶ 6, 41–42, 46. These factual allegations are enough for the court to reasonably infer that defendant knowingly discloses personally identifying information. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (holding plaintiff plausibly alleged scienter requirement).

### E. Video Tape Service Provider

Bleacher Report also argues that it is not a video tape service provider as defined by the VPPA. Mtn. at 12–14. The VPPA defines "video tape service provider," in relevant part, to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(1)(4). Bleacher Report argues that for a defendant to be a video tape service provider, the provision of video content must be a "focus of the defendant's work." Mtn. at 13. Bleacher Report argues that it is not a video tape service provider because "similar audio visual materials" does not encompass the "short video clips that form part of the sports news commentary" offered by Bleacher Report, Bleacher Report is a news organization not primarily engaged in the provision of audio visual materials, and the VPPA must be construed narrowly because it is a criminal statute with civil penalties. *Id.* None of these arguments have been addressed by the Ninth Circuit.

9

1       Bleacher Report's argument that the VPPA applies only to providers of full-length movies
2   contradicts the plain language of the VPPA.[1]  The VPPA concerns providers of "prerecorded
3   video cassette tapes or similar audio visual materials" with no stated restriction as to length.  18
4   U.S.C. § 2710(1)(4).
5       Bleacher Report's contention that it does not primarily provide audio visual materials is a
6   closer call.  In a brief addressing the constitutionality of the VPPA, the federal government has
7   argued that it does not apply to "news organizations, advocacy groups, or other entities whose
8   mission is to publicize information of public import."  United States of America's Memorandum
9   in Support of the Constitutionality of the Video Privacy Protection Act, *Stark v. Patreon, Inc.*, No.
10  3:22-cv-03131-JCS, at 11 (N.D. Cal. May 27, 2022).  And some courts have held that "for the
11  defendant to be engaged in the business of delivering video content, the defendant's product must
12  not only be substantially involved in the conveyance of video content to consumers but also
13  significantly tailored to serve that purpose."  *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp.
14  3d 1204, 1221 (C.D. Cal. 2017).  In *In re Vizio*, a district court in the Central District concluded
15  that the language "engaged in the business" "connotes 'a particular field of endeavor,' i.e. a focus
16  of the defendant's work."  *Id.* (citing Webster's Third New International Dictionary 302 (1981)
17  (def. 1d); The American Heritage Dictionary: Second College Edition 220 (1991) (defs. 1a, 1b); 2
18  Oxford English Dictionary 695 (1989) (def. 14b); Webster's New World Dictionary: Third College
19  Edition 189 (1988) (def. 1).).

20      Accordingly, courts have held that the VPPA does not apply to retail websites that provide
21  audio visual media that is incidental to their primary business.  *See Cantu v. Tapestry, Inc.*, No.
22  22-CV-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (plaintiff failed to
23  adequately allege Coach.com was a video tape service provider); *Carroll v. Gen. Mills, Inc.*, No.
24  CV231746DSFMRWX, 2023 WL 4361093, at *1 (C.D. Cal. June 26, 2023) (VPPA does not

---

[1] Bleacher Report argued in its briefing that the VPPA contemplated only "physical goods sold by video rental stores" but conceded at the July 25, 2023 hearing that the VPPA covers new media, including digital media such as video streaming. Dkt. No. 61.  Numerous courts have held that the VPPA covers digital media. *See, e.g.*, *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) ("Congress used 'similar audio video materials' to ensure that VPAA's protections would retain their force even as technologies evolve.").

United States District Court
Northern District of California

apply to food company using video to sell its food products). But these are primarily retail companies that use videos incidentally to sell their retail goods – not companies for whom the videos are the product.

Other courts have held that websites that provide video content as well as other media content – including news organizations – are video tape service providers under the VPPA. In *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022), the court rejected the Boston Globe's contention that it was not a video tape service provider. A court in this district recently held that a plaintiff had plausibly alleged that the social network Facebook.com is a video tape service provider because videos are among the content it serves to its users. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019). At the very least, Bleacher Report's argument that it is not a video tape service provider raises factual questions about the degree to which Bleacher Report's business model is tailored to delivery of audio visual materials. Accordingly, this argument is premature at the motion to dismiss stage.[2]

## II.   Class Allegations

Finally, Bleacher Report argues that the class allegations should be stricken because plaintiff agreed to a class action waiver. Mtn. at 14–18. Plaintiff argues that Bleacher Report has not submitted evidence showing plaintiff actually agreed to these terms and that discovery is needed to determine whether plaintiff agreed to the class action waiver. Opp. at 14–19. Plaintiff argues that even if he did agree to the class action waiver, it is unconscionable, and unconscionability should not be decided at the pleadings stage. *Id.* at 19–21.

At the hearing, the parties agreed that plaintiff agreed to the Terms of Use agreement when he created an account in 2007. Dkt. No. 61; *see also* Mtn. at 14; Dkt. No. 24-1, Steinberg Decl., Ex. A. The Terms of Use were hyperlinked and stated that Bleacher Report reserved the right to

---

[2] Defendant argues that the Court should apply the rule of lenity and construe the statute narrowly. The rule of lenity applies to statutes that have both criminal and civil applications. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). But the VPPA has no criminal applications and is not punitive in nature.

1    modify the Terms of Use provided it notified users. Mtn. at 14–15. Bleacher Report states that in
2    2016, 2020, late 2022, and early 2023, it updated the Terms of Use and utilized pop-ups on the
3    website, which had to be clicked through, to notify users that by using the website, they were
4    agreeing to the Terms of Use. *Id.* Bleacher Report alleges it also provided notice of the most
5    recent update via email. *Id.* The updated Terms of Use include an arbitration clause with a class
6    action waiver. Mtn. at 17; Opp. at 14. Bleacher Report argues that because plaintiff would have
7    had to agree to this waiver in order to continue using the site, his class allegations should be
8    dismissed or stricken. Mtn. at 18.

9    In support of this argument, Bleacher Report seeks judicial notice of an email with a blank
10   recipient field and the subject line "Execs to Mets: Please stop," and whose body includes a large
11   image with the Bleacher Report AM logo and, in smaller text at the bottom, a notice that Bleacher
12   Report has updated the Terms of Use. Dkt. No. 24-6, Steinberg Decl., Ex. F. It also seeks judicial
13   notice of "Way Back Machine" links archiving the website as it existed in 2016 and late 2020.

14   Plaintiff argues, *inter alia*, that Bleacher Report has not shown evidence plaintiff saw or
15   clicked through the pop-up notices and has not shown that plaintiff received the email. Plaintiff
16   also argues that even if received, the email provided insufficient notice. The subject line of the
17   email indicates content unrelated to the update notice. Dkt. No. 24-6, Steinberg Decl., Ex. F.
18   More significantly, the email shows no recipient in the "To:" field, so there is no evidence it was
19   sent to anyone, much less that plaintiff received it. *See id.* This email does not show evidence of
20   plaintiff's assent.

21   The Court accessed the Way Back Machine links provided by defendant. When accessing
22   the 2020 link, no pop-up appeared at all. Although Bleacher Report showed a screenshot at the
23   hearing showing a pop-up link at the bottom of the screen, the fact that the Court did not see the
24   pop-up through the same link creates a question of fact as to whether the link was visible to
25   different viewers at the time. No Way Back Machine link was provided for the version of the
26   website from late 2022 and early 2023. When the Court accessed the 2016 link, a small pop-up
27   appeared at the bottom of the screen, but the pop-up was unobtrusive and the Court was able to
28   access the website without clicking through.

1    Even if the Court takes judicial notice of this last link, it is not sufficient to show that
2    plaintiff received notice of the change in the terms.  The Ninth Circuit has held that "where a
3    website makes its terms of use available via a conspicuous hyperlink on every page of the website
4    but otherwise provides no notice to users nor prompts them to take any affirmative action to
5    demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click
6    on—without more—is insufficient to give rise to constructive notice."  *Nguyen v. Barnes & Noble
7    Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).  Defendant cites *Lee v. Ticketmaster L.L.C.*, 817 F.
8    App'x 393, 394 (9th Cir. 2020), for the proposition that because the pop-up stated "By using this
9    site, you agree to the Privacy Policy and Terms of Use," its presence at the bottom of the screen
10   was sufficient to put users on notice.  But in *Ticketmaster*, the notice was placed in close
11   proximity to a button the user had to click on to sign in or buy tickets.  *Id.*  In this case, the notice
12   was buried at the bottom of the page and did not prevent the user from accessing the site.  Plaintiff
13   was not required to affirmatively acknowledge the agreement in any way.

14   Because defendant has provided insufficient evidence that plaintiff assented to the class
15   action waiver, the Court finds that this a factual dispute as to whether plaintiff received notice.
16   Accordingly, defendant's motion to strike is denied as premature.  The Court need not address
17   plaintiff's arguments as to unconscionability of the agreement.

### CONCLUSION

20   To the extent plaintiff's claims rely on live video feed, those claims are **DISMISSED**.
21   Defendant's motion to dismiss and/or strike is otherwise **DENIED.**  Defendant's motion to stay
22   discovery is **DENIED** as moot.

23   **IT IS SO ORDERED**.

24   Dated: July 28, 2023

_____
SUSAN ILLSTON
United States District Judge

13